

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS

~~ATTORNEY GENERAL~~

Honorable Will Crow
County Attorney
Hemphill County
Canadian, Texas

Dear Sir:

Opinion No. O-6603
Re: Under the facts submitted, is
the Hemphill County News a newspaper
in which legal notices may be pub-
lished as required by law?

     We are in receipt of your communication of recent date requesting the opinion of this department on the above stated matter. We quote from your letter as follows:

"As County Attorney of Hemphill County, Texas, I desire an opinion from your office as to whether or not the 'HEMPHILL COUNTY NEWS' published in Hemphill County, Texas, and at Canadian, Hemphill County, Texas, is a legal newspaper in which legals could be published, such as citations by publication, on defendants who have to be cited by publication in some newspaper.

"The facts are that the Hemphill County News has been published for the past 5 years here in Canadian, Texas, and it has no general paid subscription circulation, and it has no Postal Mailing permit, to be entered as second class matter, with the U. S. Postal Department, as this paper is published weekly and goes into circulation on Friday of each week, and is mailed to Box Holders generally, save and except where it has some paid subscribers who live out of Hemphill County, Texas, and then the regular circulation postal charges are paid on each paper, the same as an individual would pay in mailing such paper to someone.

"At this time the Hemphill County News is the only paper being published in Hemphill County as the Canadian Record is now suspended on account of being unable to obtain the services of an expert printer to operate its equipment.

"I herewith hand you a copy of this newspaper, and also a copy of the opinion, dated February 6, 1945 by Mahor E. J. Cussen, Attorney-at-Law, Canadian, Texas, and will appreciate your answering the one question, to-wit: Is this newspaper a legal paper for publishing legals in, such as citations by publication, and notices of final accounts in estates, and other legal notices now required by law to be published in the administrations of estates of decedents."

Also we have carefully considered Major E. J. Cussen's excellent brief in connection with this matter which accompanied your letter.

Article 28a, Vernon's Annotated Civil Statutes, in part provides: "The following terms shall, unless the context indicates otherwise, have the following respective meanings:

"(1)  The term 'publication' shall mean any proclamation, notice citation, advertisement, or other matter required or authorized by law to be printed in a newspaper or newspapers by any institution, board, commission, department, officer, agent, representative, or employee of the State or of any subdivision or department of the State, or of any county, political subdicision, or district of whatever nature within the State, whether to be paid for out of public funds or charged as costs or fees.

"(2)  The term 'newspaper' shall mean any newspaper devoting not less than twenty-five (25) per cent of its total colum lineage to the carrying of items of general interest, published not less frequently than once each week, entered as second-class postal matter in the county where published, and having been published regularly and continuously for not less than twelve (12) months prior to the making of any publication mentioned in this Act."

Article 29, V.A.C.S., in part provides:  Wherever any publication, as publication is defined in Section 1 hereof, is authorized or required by any law, general or special, to be inserted in a newspaper, the legal rate which such newspaper shall charge for such publication shall be Two (2) Cents per word for the first insertion of such publication, and One Cent per word for each subsequent insertion, or such newspaper shall be entitled to charge for such publication at a rate equal to but not in excess of the lowest published word or line rate of that newspaper for classified advertising.  . . .

"Without intended to exclude any other publication to which this Act applies, it is specially provided that this Act shall apply to all citations or notices which are required to be published or may be published in delinquent tax suits and to notices of sale of real estate under execution, order of sale, or any other judicial sale provided for in Articles 3803, 4203, 7276, and 7372 of the Revised Civil Statutes of Texas, 1925. As amended Acts 1941, 47th Leg., p. 480, ch. 303 § 1."

Article 29a, V.A.C.S., in part procides: "After the effective date of this Act, in every case where any law, general or special, requires the giving of any notice, the making of any proclamation or advertisement, or the service of any citation by any institution, board, commission, department, officer, agent, representative, or employee of the State or of any subdivision or department of the State or of any county, political subdivision, district of whatever nature within the State by publication in a newspaper, the giving of such notice, the making of such proclamation or advertisement, or the service of such citation shall be by publication in a newspaper, as defined

in Section 1 of this Act. If any such law or laws specifies the manner of publication of such notice, proclamation, advertisement, or citation in a newspaper, such law or laws shall govern the manner of publication of such notice, proclamation, advertisement, or citation. If the manner of publication of such notice, proclamation, advertisement, or citation is not prescribed by law requiring such notice to be given, such proclamation or advertisement to be made, or such citation to be served, then publication of such notice, proclamation, advertisement, or citation shall be made in a newspaper subject to the follwoing restrictions and requirements:

". . .

"In every case where the service of any citation or notice in any case, controversy, suit, or proceeding in any of the Courts of the State is required to be by publication under the provisions of any general or special law of this State, such publication shall be published as required by the general or special law providing for such notice by publication."

The Legislature has the power to define words employed in the statutes (Eppstein v. State, 143 S.W. 144), and in Title 1 of the General Provisions, Article 28a, supra, the Legislature has defined the word "newspaper." A clear and unambiguous definition of a term or a word by the Legislature is binding upon the courts as an edpression of legislative intent, regardless of the meaning of the word in common parlance or in other connections. (State v. Frost, Civ. App. 16 S.W. (2d) 331; Eppstein v. State, supra.) A statute will be construed with reference to the general system of legislation of which it forms a part. (Parshall v. State, 138 S.W. 759). Ordinarily a statutory provision will be given an interpretation in conformance with the subject matter of the code in which it is found. (Briggs v. Bucker, Civ. App. 19 S.W. (2d) 190). Also it is recognized as a correct rule of construction that when a statute makes a general provision apparently for all cases and a special provision or exception for a particular case or class, the general provision yields and the special provision or exception prevails in so far as the particu ular class or case is concerned. (Perez v. Perez, 59 Tex. 322; Balfour v. Collins, 25 S.W. (2d) 804; 39 Tex. Jur. Sec. 114, p. 213.).

From the facts stated by you, it is apparent that the "Hemphill County News" does not conform to the statutory requirement of a "newspaper" as defined in the General Provisions, Title 1, Article 28a, supra, and in view of the foregoing authorities with reference to the rules of statutory construction, it is our opinion that whenever a statute or a rule of civil procedure, adopted and promulgated in conformity with, and in obedience to a Legislative enactment, (H.B. 108, ch. 25, pp. 201-203, Acts Reg. Session 46th Leg., 1939) makes provisions with reference to puvlication in any "newspaper, " such newspaper must conform to the definition of a "newspaper" as set forth in Article 28a, unless the language of the statute or rule expressly authoriaes such publication in a "newspaper" which does not conform to the foregoing definition. The question submitted by you

with reference to legal publication is very broad and general. To determine
whether the printing of any particular kind of publication in the newspaper
in question would meet the requirements of law would be dependent upon the
language of the particular rule or statute requiring or authorizing that
particular kind of notice or publication, and we shall not herein attempt to
discuss each of the statutes or rules with reference to the publication of
legal notices, etc. However, in view of the foregoing, it is our opinion
that the statutory definition of a "newspaper" would be applicable in connec-
tion with any statute or rule requiring or authorizing publication of legal
notices about which you may have any question, unless there is a clear excep-
tion indicated in the language of such statute or rule.

Although the Legislature has the power to define a term or word em-
ployed in the statutes, and it has defined the word "newspaper" in Article 28a,
yet such term or word as used in the Constitution is not necessarily limited
by the legislative definition. We note that Article 17, Section 1, Constitu-
tion of Texas, provides for the publication of proposed constitutional amend-
ments in the following language:

"The Legislature, at any biennial session, by a vote of two-thirds of all the
members elected to each House, to be entered by yeas and nays on the journals,
may propose amendments to the Constitution, to be voted upon by the qualified
electors for members of the Legislature, which proposed amendments shall be
duly published once a week for four weeks, commencing at least three months
before an election, the time of which shall be specified by the Legislature,
in one weekly newspaper of each county, in which such a newspaper may be pub-
lsihed; . . ."

The foregoing constitutional provision was originally adopted in 1845 and car-
ried forward in the present constitution, while Article 28a, V.A.C.S., was
effective in 1941. Also, we note that the foregoing constitutional provision
was adopted prior to the Act of Congress of 1879 authorizing second class mail-
ing permits for newspapers, while the statutory definition of a newspaper,
which includes the requirement that a newspaper have a second class mailing
permit, was enacted subsequent to said Act of Congress of 1879. With reference
to the meaning of words as used in a constitutional provision, words must be
understood to have been used in their ordinary signification unless the context
indicates a different meaning. (Ex Parte Hart, 56 S.W. 341; Sugg v. Smith,
(Civ. App.) 205 S.W. 363). We are unable to find any indication in any consti-
tutional provision wherein the term "newspaper" is limited in the precise
manner that said term is limited or defined in the statutes; thus, a "newspaper"
complying with the ordinary signification of the term would meet the require-
ments of the foregoing constitutional provision. In view of this, it is our
opinion that the publication of proposed constitutional amendments in a news-
paper of the character of the "Hemphill County News" would be in compliance with
Article 17, Section 1, of the Constitution.
JAE:ddt:egw

APPROVED JUNE 8, 1945
/s/ Grover Sellers
ATTORNEY GENERAL OF TEXAS

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ J. A. Ellis
Assistant